624 S.E.2d 777

**Fredrick Allen FERNANDEZ, Petitioner Below, Appellee,**

v.

**Lyndall Sarah FERNANDEZ, Respondent Below, Appellant.**

No. 32671.

Supreme Court of Appeals of West Virginia.

Submitted: Oct. 5, 2005.

Filed: Nov. 17, 2005.

Patrick L. Cottrell, Esq., Charleston, for the Appellant.

James W. Keenan, Esq., Keenan & Associates, L.C., Fayetteville, for the Appellee.

The Opinion of the Court was delivered PER CURIAM.

Justice STARCHER concurs and reserves the right to file a concurring opinion.

PER CURIAM.

This action is before this Court upon the appeal of the appellant, Lyndall Sarah Fer-

nandez, from the December 1, 2004, order of the Circuit Court of Fayette County, West Virginia, refusing her appeal from an order of the Family Court entered on October 20, 2004. Pursuant to the Family Court order, the appellant's motion seeking relief under Rule 60(b) of the West Virginia Rules of Civil Procedure from a divorce decree previously entered in the Family Court was denied. The decree directed that the appellant and the appellee, Fredrick Allen Fernandez, be divorced and that the Settlement Agreement signed by the parties be incorporated therein.

According to the appellant, the entry of the divorce decree by the Family Court was improper because it followed a final divorce hearing conducted without notice to her and in her absence. The appellant contends that, as a result, the Family Court and the Circuit Court should have invalidated the decree pursuant to Rule 60(b). The appellee, on the other hand, who filed the divorce action, asserts that, the lack of notice notwithstanding, the appellant knew of the final hearing but chose not to attend. According to the appellee, the Circuit Court and the Family Court, therefore, correctly determined that the appellant was not entitled to relief under Rule 60(b).

This Court has before it the petition for appeal, the record herein and the briefs and argument of counsel. Central to this matter is Rule 21 of the West Virginia Rules of Practice and Procedure for Family Court which provides that, except for "good cause shown and placed on the record," a final hearing in a divorce action before a Family Court shall not be conducted prior to the expiration of the time in which the respondent is required to serve an answer. Here, the parties executed a written Consent to hold the final hearing prior to the expiration of the 20 day period in which the appellant was required to serve her answer to the petition for divorce. Importantly, however, neither the Consent nor any other matter of record indicated when the final hearing would actually take place before the Family Court. The hearing was, in fact, conducted within one hour of the filing of the petition for divorce.

For the reasons stated below, this Court is of the opinion that the failure to provide the appellant with written notice of the final divorce hearing warranted relief under Rule 60(b). Consequently, the Circuit Court committed error in upholding the Family Court's denial of the appellant's motion in that regard. The December 1, 2004, order of the Circuit Court of Fayette County is, therefore, reversed, and this action is remanded to that Court with directions that the divorce decree be set aside and that further proceedings be conducted in conformity with this opinion.

I.

Factual and Procedural Background

On October 6, 2003, the appellant, Lyndall Sarah Fernandez, and the appellee, Fredrick Allen Fernandez, went to the law office of James W. Keenan in Fayetteville, West Virginia, to discuss filing for divorce. The parties had been married for approximately fifteen years and had one child, age fourteen. The appellant and the appellee indicated to Keenan that the divorce was uncontested and that they wanted to finalize the proceedings in an expeditious manner. Nevertheless, Keenan, who had previously consulted with the appellee concerning the divorce and was the appellee's attorney, explained to the appellant that he would not be representing her and that she should consider obtaining independent legal advice.[1] The appellant, howev-

---

1. Keenan's admonition to the appellant was, thus, in accord with this Court's opinion in *Walden v. Hoke*, 189 W.Va. 222, 429 S.E.2d 504 (1993), syllabus point 4 of which holds:

   It is improper for a lawyer to represent both the husband and the wife at any stage of the separation and divorce proceeding, even with full disclosure and informed consent. The likelihood of prejudice is so great with dual representation so as to make adequate representation of both spouses impossible, even where the separation is "friendly" and the divorce uncontested. The provisions of *W.Va. Code* § 48-2-4(a)(10) (1992) [now *W.Va.Code*, 48-5-201 (2001)], which allow a divorce for irreconcilable differences, do not alter the impropriety of dual representation.

   *Mitchell v. Mitchell*, 205 W.Va. 203, 210, 517 S.E.2d 300, 307 (1999). *See also*, Rule 1.7.(a) of the West Virginia Rules of Professional Conduct which states, generally, that a lawyer shall not represent a client, "if the representation of that

er, remained *pro se* until after the entry of the divorce decree.

While in Keenan's office, a Joint Financial Statement, Settlement Agreement and Joint Parenting Plan were prepared and signed by the parties. At 1:49 p.m. that day, October 6, 2003, the appellee's petition for divorce, based upon the ground of irreconcilable differences, was filed in the office of the Fayette County Circuit Clerk. Shortly thereafter, the Joint Financial Statement, Settlement Agreement and Joint Parenting Plan were also filed. The appellant accepted service of process and, utilizing a form obtained from the Circuit Clerk, filed an answer admitting the allegations set forth in the petition.[2] Finally, the parties filed a document entitled Consent to Final Hearing Before Expiration of Time to Answer. Citing Rule 21 of the Rules of Practice and Procedure for Family Court, the Consent indicated that the parties agreed to the Family Court holding a final hearing in the action prior to the expiration of the 20 day period in which the appellant was required to serve her answer to the petition for divorce.[3]

Soon after, at 2:45 p.m. that day, the Family Court conducted a final hearing in the action. The appellant, aware that a hearing was taking place, chose to wait outside in the parking lot in the appellee's motor vehicle. The appellant was never formally notified in advance of the hearing. Nor does the evidence demonstrate that she knew that the hearing then occurring constituted a "final" hearing in the action. Following the hearing, the Family Court, on October 6, 2003, entered the final divorce decree. The decree, which incorporated the Settlement Agreement, provided: (1) that the parties were divorced, (2) that alimony was waived, (3) that each party waived any claim to the other's pension rights,[4] (4) that the parties would share custody of their minor child, (5) that the appellant and the child would have possession and use of the marital residence until the child graduates from high school, reaches the age of 18 or is otherwise emancipated and (6) that the appellee would pay child support in the amount of $500.00 per month.[5]

Neither the appellant nor the appellee appealed the entry of the final divorce decree to the Circuit Court of Fayette County.

Thereafter, the appellant obtained counsel and, on April 5, 2004, filed a motion before the Family Court to set aside the October 6, 2003, final divorce decree. The motion, filed

client will be directly adverse to another client [.]"

2. A review of the record demonstrates that Keenan neither supplied the form nor prepared the appellant's answer to the petition for divorce. Syllabus point 5 of *Walden, supra,* states: "A plaintiff's lawyer should not prepare an answer for the defendant in any divorce, regardless of whether the divorce is uncontested and simple." *Mitchell, supra,* 205 W.Va. at 210, 517 S.E.2d at 307; syl. pt. 2, *Lawyer Disciplinary Board v. Frame,* 198 W.Va. 166, 479 S.E.2d 676 (1996).

3. Inasmuch as Rule 21 constitutes a "restriction on time" with regard to the holding of a final divorce hearing, it does not matter that, as in this action, the answer was filed on the same day as the petition for divorce. Rule 21 states in its entirety:

(a) *Conversion of hearing to final hearing.*— By agreement of all parties placed on record, any hearing may be converted to a final hearing if sufficient evidence is presented to sustain the cause of action and resolve all issues.

(b) *Restriction on time for final hearing.*— Except for good cause shown and placed on the record, a final hearing shall not be conducted prior to expiration of the time in which the respondent is required to serve an answer.

In any event, although the Consent signed by the parties in this action authorized the Family Court to hold the final hearing prior to the 20 day period in which the appellant was required to serve her answer, it did not speak to the actual scheduling of the hearing. In that regard, it should be noted that the appellant did not check the box on her form answer which stated: "The Respondent waives notice of the final hearing and waives the right to appeal the Final Divorce Decree."

4. The provision of the decree concerning pension rights primarily concerned the appellee's 401K pension account valued at $58,000.00.

5. According to the Joint Financial Statement filed by the parties, the appellee worked as a supervisor for Elk Run Coal Company and had a gross monthly income of $4,500.00. The appellant states, however, that the Child Support Formula indicated that the appellee's gross monthly income was $7,000.00. That discrepancy was never resolved by the Family Court. The Joint Financial Statement reveals that the appellant, who worked as a home care provider, had a monthly income of $650.00.

under Rule 60(b), alleged, *inter alia*, that the decree resulted from the holding of an unscheduled hearing in the appellant's absence and, in addition, that the Settlement Agreement incorporated in the decree was inequitable.[6] Following an evidentiary hearing, the Family Court entered the order of October 20, 2004, denying the appellant's requested relief. The Family Court determined that the Consent signed by the parties had authorized it to hold the final hearing on October 6, 2003, prior to the expiration of the 20 day period in which the appellant was required to serve her answer. Moreover, the Family Court held that, although the appellant "did not waive notice of the final hearing," her awareness of the hearing and her voluntary absence therefrom precluded relief under Rule 60(b). Finally, the Family Court concluded that the Settlement Agreement was fair and equitable to both sides.

On December 1, 2004, the Circuit Court of Fayette County refused the appellant's appeal from the Family Court's denial of her Rule 60(b) motion. Thereafter, the appeal to this Court was granted.

**II.**

**Standard of Review**

■ Under Rule 60(b), a court may relieve a party from a final judgment upon a number of grounds including mistake, the judgment is void or any other reason justifying relief from the operation of the judgment.[7] In syllabus point 5 of *Toler v. Shelton,* 157 W.Va. 778, 204 S.E.2d 85 (1974), this Court observed: "A motion to vacate a judgment made pursuant to Rule 60(b), W.Va. R.C.P., is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion." That principle has been cited often by this Court. *See,* syl. pt. 1, *Jividen v. Jividen,* 212 W.Va. 478, 575 S.E.2d 88 (2002); syl. pt. 2, *Wolford v. Landmark American Insurance Company,* 196 W.Va. 528, 474 S.E.2d 458 (1996); syl. pt. 1, *Nancy Darlene M. v. James Lee M.,* 195 W.Va. 153, 464 S.E.2d 795 (1995); syl. pt. 1, *Jackson General Hospital v. Davis,* 195 W.Va. 74, 464 S.E.2d 593 (1995); syl. pt. 1, *Blair v. Ford Motor Credit*

---

**6.** It should be noted that the language found in Rule 60(b) is comparable to that found in *W.Va. Code,* 51–2A–10 (2001). Subsection (a) of that statute provides:

> Any party may file a motion for reconsideration of a temporary or final order of the family court for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been available at the time the matter was submitted to the court for decision; (3) fraud, misrepresentation or other misconduct of an adverse party; (4) clerical or other technical deficiencies contained in the order; or (5) any other reason justifying relief from the operation of the order.

*See also,* Rule 25 of the Rules of Practice and Procedure for Family Court which states: "Any party may file a motion for reconsideration of a family court order as provided in *W.Va.Code,* 51–2A–10."

In view of the comparable language found in Rule 60(b) and of the standard of review applicable thereto, this Court, for purposes of convenience, will adopt the appellant's designation of the motion filed before the Family Court as a request for relief under Rule 60(b). *See, Ray v. Ray,* 216 W.Va. 11, 602 S.E.2d 454 (2004), indicating, however, that, inasmuch as *W.Va.Code,* 51–2A–10 (2001), specifically applies to Family Courts, its use is more appropriate than Rule 60(b).

**7.** West Virginia Rule of Civil Procedure 60(b) states in part:

> *Mistakes; inadvertence; excusable neglect; unavoidable cause; newly discovered evidence; fraud, etc.*—On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken.

In this action, the motion for relief under Rule 60(b) was filed in April 2004, thus within one year of the entry of the final divorce decree on October 6, 2003.

*Company,* 193 W.Va. 250, 455 S.E.2d 809 (1995). As this Court stated in *Intercity Realty Company v. Gibson,* 154 W.Va. 369, 377, 175 S.E.2d 452, 457 (1970), *overruled on other grounds in Cales v. Wills,* 212 W.Va. 232, 569 S.E.2d 479 (2002): "[I]t has been widely held that a motion to vacate a judgment under Rule 60(b) is addressed to the sound discretion of the court and that an abuse of such discretion must be shown before denial of the motion will be overturned on appeal." *See also,* Lugar & Silverstein, *West Virginia Rules of Civil Procedure,* p. 466 (Michie 1960), stating that the granting of motions under Rule 60(b) "rests within the sound discretion of the trial court and may be upon such terms as the court finds just."

■ In that context, this Court, in syllabus point 6 of *Toler,* said as follows:

A court, in the exercise of discretion given it by the remedial provisions of Rule 60(b), W.Va. R.C.P., should recognize that the rule is to be liberally construed for the purpose of accomplishing justice and that it was designed to facilitate the desirable legal objective that cases are to be decided on the merits.

Syl. pt. 4, *Delapp v. Delapp,* 213 W.Va. 757, 584 S.E.2d 899 (2003); syl. pt. 7, *Law v. Monongahela Power Company,* 210 W.Va. 549, 558 S.E.2d 349 (2001).[8]

### III.

### Discussion

■ As long recognized, "[t]he due process of law guaranteed by the State and Federal Constitutions, when applied to procedure in the courts of the land, requires both notice and the right to be heard." Syl. pt. 2, *Simpson v. Stanton,* 119 W.Va. 235, 193 S.E. 64 (1937). *See also,* syl. pt. 3, *State ex rel. Chris Richard S. v. McCarty,* 200 W.Va. 346, 489 S.E.2d 503 (1997); syl. pt. 1, *Clay v. City of Huntington,* 184 W.Va. 708, 403 S.E.2d 725 (1991); syl., *Crone v. Crone,* 180 W.Va. 184, 375 S.E.2d 816 (1988).

By signing the Consent under Rule 21 of the Rules of Practice and Procedure for Family Court, the appellant herein agreed to the holding of a final divorce hearing prior to the expiration of the 20 day period in which she was required to serve her answer. Neither the Consent nor any other matter of record indicated when, within the 20 day period, the final hearing would actually take place. In fact, the final hearing was spontaneously scheduled and was conducted by the Family Court within one hour of the filing of the petition for divorce. In neither the Consent nor in her answer did the appellant waive formal, written notice of the final divorce hearing. As stated above, the appellant did not check the box on her form answer which stated: "The Respondent waives notice of the final hearing [.]" Moreover, in subsequently considering the appellant's motion under Rule 60(b), the Family Court acknowledged that the appellant "did not waive notice of the final hearing."

The fact that the appellant was, nevertheless, aware on October 6, 2003, that a hearing was occurring, but chose not to attend, is

---

**8.** It must be recognized, however, that the liberal construction afforded Rule 60(b) is somewhat mitigated by the additional principle expressed in syllabus point 3 of *Toler* that "[a]n appeal of the denial of a Rule 60(b) motion brings to consideration for review only the order of denial itself and not the substance supporting the underlying judgment nor the final judgment order." Syl. pt. 3, *Jividen, supra.* Accordingly, the scope and reach of Rule 60(b) is not designed to render the pursuit of justice, as stated by Justice Jackson of the Supreme Court of the United States concerning habeas corpus, "an endurance contest" between the parties. *Brown v. Allen,* 344 U.S. 443, 542, 73 S.Ct. 397, 97 L.Ed. 469 (1953) (Jackson, J., concurring).

Thus, this Court acknowledges that the following standard of review set forth in the syllabus of *Carr v. Hancock,* 216 W.Va. 474, 607 S.E.2d 803 (2004), though helpful, is not directly relevant

under the circumstances herein where there was no direct appeal from the final divorce decree but, instead, a challenge to the denial of a Rule 60(b) motion:

In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo.*

Syl. pt. 1, *Miller v. Miller,* 216 W.Va. 720, 613 S.E.2d 87 (2005). *See also, W.Va.Code,* 51–2A–14(c) (2005); *W.Va.Code,* 51–2A–15(a) (2001); syl. pt. 2, *Lucas v. Lucas,* 215 W.Va. 1, 592 S.E.2d 646 (2003); syl. pt. 1, *May v. May,* 214 W.Va. 394, 589 S.E.2d 536 (2003).

deprived of its compelling quality by the competing circumstances envisioned under Rule 21. Section (a) thereof states that "*any* hearing may be *converted* to a final hearing." (emphasis added) *See,* n. 3, *supra.* Thus, it is of importance to note that there is nothing in the record to show that the appellant had any indication that the hearing then occurring was the final divorce hearing in the action. Even so, no inquiry was made during the hearing concerning the appellant's whereabouts. Nor was the discrepancy concerning whether the appellee's monthly income was $4,500.00 or $7,000.00 ever resolved. *See,* n. 5, *supra.*

In *Preece v. Preece,* 195 W.Va. 460, 465 S.E.2d 917 (1995), a final divorce hearing was conducted with only the appellee-husband in attendance. His wife, the appellant, who allegedly chose not to attend the hearing, asserted that, inasmuch as she had never received written notice of the time and date thereof, the divorce decree was invalid. This Court held, in *Preece,* that, although such an irregularity did not "necessarily render the order unenforceable *per se,*" the action should be remanded for further inquiry concerning whether the separation agreement was fair and reasonable and to assure that all financial disclosure requirements had been observed. 195 W.Va. at 465, 465 S.E.2d at 922.

■ Here, a review of the video recording of the October 6, 2003, final divorce hearing reveals that a rather perfunctory proceeding took place, lasting no more than ten minutes. It is undisputed that the appellant never received written notice of the hearing. Nor does the record indicate that she had any awareness of the nature of the hearing, even though she knew that a proceeding of some kind was occurring while she waited in the parking lot. Under those circumstances, this Court is of the opinion that the failure to provide the appellant with written notice of the final divorce hearing warranted relief pursuant to Rule 60(b). Consequently, the Circuit Court committed error in upholding the Family Court's denial of the appellant's motion in that regard. Such error constitutes an abuse of discretion under the standard of review discussed above.

## IV.

### Conclusion

The December 1, 2004, order of the Circuit Court of Fayette County is, therefore, reversed, and this action is remanded to that Court with directions that the divorce decree be set aside and that further proceedings be conducted in conformity with this opinion.

Reversed and Remanded

STARCHER, J., concurring.

I write separately to praise my colleagues for their politeness and restraint in setting out the facts in this case. I, personally, am appalled by the facts. I think the majority should have taken the family court judge and the appellee's lawyer to task for tipping the scales of justice so unevenly against the appellant.

The appellant in this case had a reading disability that left her with a seventh-grade reading comprehension level. She worked as a caregiver making $650.00 a month, while her appellee husband worked as a coal mine supervisor earning $7,000.00 a month.

The appellee hired a lawyer and worked out all the details of pursuing a divorce from the appellant. There's nothing ethically wrong with that. The problems started when the appellee dragged his wife into his lawyer's office, and kept her there for an undetermined amount of time to complete all of the paperwork for the divorce, from beginning to end. The appellant never had a lawyer, and never had time to think about her options. The majority suggests the lawyer "did the right thing" by telling the appellant she could get a lawyer; he did, but then he ignored that advice and had his secretary assist the appellant in filling out various forms.

The record indicates that the appellee's divorce petition was filed at 1:49 p.m., the same day both the appellant and appellee were in the appellee's lawyer's office. The summons issued by the circuit clerk indicated the appellant had twenty days to answer, yet she filed her *pro se* answer ten minutes later at 1:59 p.m.

The appellee, and the appellee's lawyer, would have us believe that after the divorce was filed, they engaged in fair, impartial discussions with the appellant concerning the disposition of the parties' marital property. Yet, at 2:45 p.m. the same day, the appellee and his lawyer appeared before the family court judge and got the judge to enter the lopsided final divorce decree that is the basis for this appeal. As best I can tell, the appellee never offered to say, and the judge never bothered to ask, where the appellant was while the "hearing"—if you want to call it that—occurred; the appellant was sitting outside in the appellee's vehicle. Sixty-three minutes after the appellant filed her answer, and sixteen minutes after the "hearing" before the family court judge, a property settlement agreement, a joint financial statement, and a joint parenting plan signed by the appellee and the appellant were all filed with the circuit clerk. All of these documents were notarized by the appellee's lawyer's secretary.

The paperwork that was filed in this case—and which presumably was presented to and read by the family court judge—should have triggered alarm bells in the judge's mind. By all appearances, the parties are in disparate bargaining positions. So when the party in a vastly superior bargaining position showed up in the courtroom, with a lawyer, and wanted an instant divorce from his unrepresented wife, and wanted the judge to sign off on a settlement agreement that gave the wife next to nothing that she was entitled to under the law, the judge should have slowed the case down. When the judge saw that the appellant had agreed to give the appellee $112,000.00 in marital property, but had agreed to keep for herself only a $2,200.00 car that was subject to a lien of the same amount, the judge should have— at a minimum—asked "Where is the appellant?" and "Why did she agree to this?"

I recognize that many family court judges have a daunting caseload. But permitting lawyers to engage in oppressive behavior is not an acceptable means of docket control. Cramming a case with lopsided results through the court system in record time is also not an acceptable means of docket control. The family court judge should have smelled what the appellee and the appellee's lawyer were dishing out before signing off on the parties' settlement agreement, and should have taken affirmative steps to ensure that some semblance of fairness and due process was involved with the proceedings.

Otherwise, I concur with the majority's decision.