# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **C.W.**

**No. 24-769** (Fayette County CC-10-2022-JA-90)

## MEMORANDUM DECISION

The petitioner G.H.,[1] the child's maternal step-grandfather, appeals the Circuit Court of Fayette County's November 27, 2024, order denying him visitation with the child, arguing that the circuit court's findings regarding certain statutorily mandated factors were clearly erroneous.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The DHS filed an abuse and neglect petition[3] in August 2022, naming the child's maternal grandmother and the child's mother as respondents. At the time of the petition, the maternal grandmother had custody of the child pursuant to a guardianship, as the child's mother had been incarcerated since his birth. Upon the child's removal from the maternal grandmother's home, the child was placed in a kinship placement with the petitioner, who was divorced from the maternal grandmother at that time.

In January 2023, the court adjudicated the mother, who had been released on parole, and granted her a post-adjudicatory improvement period which required her to participate in supervised visits with the child.[4] However, there were numerous issues with visitation—which the DHS attributed to the petitioner—and the petitioner engaged in other conduct, including speaking negatively about the mother in the child's presence, that the court later characterized as an effort "to interfere with or undermine the child's reunification with the mother." In January 2024, the DHS removed the child from his kinship placement with the petitioner and instead placed the child with a maternal aunt in an effort to aid in reunification with the mother. The circuit court held a

---

[1] The petitioner is self-represented. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Heather L. Olcott. Counsel Jamison T. Conrad appears as the child's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] The proceedings below concerned additional children and respondents not at issue on appeal.

[4] In July 2023, the mother received a ninety-day extension to her improvement period.

1

dispositional hearing in April 2024, at which time it ordered that legal and physical custody of the child be restored to the mother upon the completion of the school year.

After the petitioner filed multiple objections to the court's disposition, the court held an evidentiary hearing in September 2024. Noting that the petitioner had *not* filed a "a formal motion or petition requesting grandparent visitation under Article 10 of Chapter 48 of the West Virginia Code," despite being advised that this statute governed the court's decision, the court nevertheless undertook a thorough consideration of the thirteen factors set forth in West Virginia Code § 48-10-502. The court found that "the balance of the factors . . . overwhelmingly weigh[ed] against grandparent visitation," given, among other things, the "fit and suitable" mother's opposition, the "complicated, tumultuous, and toxic" relationship between the mother and the petitioner, that the petitioner viewed himself as a parent "with the right to dictate what happens to [the child]," and the petitioner's efforts to undermine reunification as evidenced by "[his] actions and the opinions of the CPS workers and providers." The court therefore concluded that the petitioner failed to rebut the presumption in favor of parental preference set forth in West Virginia Code § 48-10-702(b) and failed to provide clear and convincing evidence that visitation was in the child's best interests. Moreover, the court found that "visitation would substantially interfere with the parent-child relationship" and "would risk subjecting [the child] to continued efforts at parental alienation." Accordingly, the court denied the petitioner's request for grandparent visitation. It is from this "Final Order Denying Grandparent Visitation" that the petitioner now appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that the court erroneously found that he (1) failed to rebut the statutory presumption in favor of parental preference and (2) failed to provide clear and convincing evidence that visitation was in the child's best interest under the factors outlined in West Virginia Code § 48-10-502. We do not agree. West Virginia Code § 48-10-501 directs circuit courts to "grant reasonable visitation to a grandparent upon a finding that visitation would be in the best interests of the child and would not substantially interfere with the parent-child relationship," based upon the court's consideration of the thirteen factors set forth in West Virginia Code § 48-10-502. West Virginia Code § 48-10-702(b) states that "there is a presumption that visitation privileges need not be extended to [a] grandparent if the parent through whom the grandparent is related to the grandchild has custody of the child," as this arrangement would permit visitation "if the parent so chose." However, "[t]his presumption may be rebutted by clear and convincing evidence that . . . visitation is in the best interest of the child." *Id*. As we have noted, these statutes seek to reconcile the "valid competing interests ensconced within a grandparent visitation determination," in which a fit parent's wishes must be given significant weight. *See In re Visitation of A.P.*, 231 W. Va. 38, 41-2, 743 S.E.2d 346, 349 (2013) (noting that this principle stems from the United States Supreme Court's holding in *Troxel v. Granville*, 530 U.S. 57 (2000)); *see also In re Visitation of L.M.*, 245 W. Va. 328, 337, 859 S.E.2d 271, 280 (2021) ("This Court has held that [West Virginia Code § 48-10-501 and 502] contemplate the special weight that is constitutionally afforded a fit parent's wishes.").

The petitioner asserts that several factors outlined in West Virginia Code § 48-10-502 weighed in favor of him receiving visitation with C.W., including his longtime caregiving relationship with the child both before and after the child's placement with him during the

proceedings below. However, after a thorough examination, the circuit court found that other factors significantly outweighed these considerations, including the mother's strong opposition to visitation between the child and the petitioner, as well as the troubled relationship between the mother and the petitioner; as a result, the court found that visitation would have a "significant destabilizing effect" on the child's relationship with his mother.[5] The court cited ample evidence to support these conclusions. Thus, we find no error in the circuit court's conclusion that the petitioner did not overcome the presumption of West Virginia Code § 48-10-702(b) with clear and convincing evidence showing that visitation was in the child's best interests. Nor do we find error in the court's conclusion that visitation would substantially interfere with the parent-child relationship. Circuit courts may deny grandparent visitation upon such findings. *See* W. Va. Code § 48-10-501 and § 48-10-702(b). As such, the petitioner is not entitled to relief.[6]

---

[5] The petitioner asserts, as a separate assignment of error, that the circuit court erred in making certain factual findings which were not supported by the clear weight of the evidence. Specifically, the petitioner objects to the court's conclusions that his conduct demonstrated efforts to undermine reunification and that he viewed himself as the child's parent. The petitioner also argues that the circuit court improperly attributed the grandmother's behavior to him. These arguments "display[] a fundamental misunderstanding of our role as a reviewing court." *In re D.S.*, 251 W. Va. 466, --, 914 S.E.2d 701, 707 (2025). As we have explained, "[w]e . . . do not reweigh the evidence or make credibility determinations." *Id.* Thus, a reviewing court "must affirm a finding if the circuit court's account of the evidence is plausible in light of the record." *Id.* at --, 914 S.E.2d at 706 (quoting Syl. Pt. 1, in part, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177(1996)). Here, the circuit court heard and considered testimony from several witnesses, including the petitioner, before making its detailed findings, including numerous findings specific to the petitioner. Because the circuit court's findings are not just plausible but supported by the record, we find that it did not err.

[6] The petitioner raises a final assignment of error asserting that the circuit court denied his right to due process because he was not given advance notice of the other parties' arguments opposing his request for visitation and was further denied the opportunity to offer rebuttal evidence. In support, the petitioner asserts that "[t]he due process of law guaranteed by the State and Federal Constitutions . . . require[s] both notice and the right to be heard." Syl. Pt. 3, *Fernandez v. Fernandez*, 218 W. Va. 340, 642 S.E.2d 777 (2005). However, the petitioner's application of *Fernandez* is incorrect, as this case concerns the right to receive advance notice of a hearing, giving one the opportunity to appear before the court to be heard. Here, it is undisputed that the petitioner received notice of the hearing. As the petitioner cites to no authority granting him the right to receive notice of any arguments for or against his request for grandparent visitation, he is entitled to no relief. Moreover, the circuit court did not deny the petitioner the opportunity to present rebuttal evidence at the evidentiary hearing, as the petitioner never requested or attempted to do so.

Finally, in his reply brief, the petitioner attempts to set forth several additional errors. However, Rule 10(g) of the West Virginia Rules of Appellate Procedure states that a petitioner's reply brief must comply with the parts of Rule 10 that are applicable to respondents, and Rule 10(d) provides that a "respondent's brief must specifically respond to each assignment of error." As such, the petitioner is limited to the assignments of error in his initial brief and may not raise new assignments of error in his reply. *See also In re L.G.*, No. 19-0940, 2020 WL 3447464, at *1

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 27, 2024, order is affirmed.

Affirmed.

**ISSUED**: November 4, 2025

**CONCURRED IN BY**:

Justice C. Haley Bunn
Justice Charles S. Trump IV
Senior Status Justice John A. Hutchison

**DISQUALIFIED:**

Justice Thomas H. Ewing

**NOT PARTICIPATING:**

Chief Justice William R. Wooton

n.2 (W. Va. June 24, 2020) (memorandum decision) (relying on Rule 10(d) and (g) to preclude a petitioner from raising a new assignment of error in reply).

4